[Cite as *Robinson v. Robinson*, 2026-Ohio-723.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JASON M. ROBINSON | Case No. 2025 AP 070026 |
| Plaintiff – Appellee – Cross-Appellant | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas, Case No. 2023 TC 06 0224 |
| SARAH L. ROBINSON | Judgment: Affirmed/Reversed in Part & Remanded |
| Defendant – Appellant – Cross-Appellee | Date of Judgment Entry: March 3, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; Kevin W. Popham, Appellate Judges

**APPEARANCES:** J. KEVIN LUNDHOLM, for Plaintiff-Appellee-Cross-Appellant; JAMES J. ONG, for Defendant-Appellant-Cross-Appellee.

*King, P.J.*

{¶ 1}   Defendant-Appellant-Cross-Appellee, Sarah L. Robinson, and Plaintiff-Appellee-Cross-Appellant, Jason M. Robinson, appeal the June 4, 2025 judgment entry of the Tuscarawas County Court of Common Pleas denying their objections to the magistrate's decision on their divorce.  We affirm/reverse in part the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   The parties were married on October 14, 2006; they have one child born in August 2014.  On June 12, 2023, husband filed a complaint for divorce.  The parties resolved many differences; contested issues involved child support, division of the marital residence (purchased under a land installment contract), and division of wife's pension plan (State Teachers Retirement System of Ohio).  Six hearings before a magistrate were

held in 2024. By decision filed March 26, 2025, the magistrate recommended that husband retain the marital residence and wife receive $61,998.59 for her equitable interest. Wife retains her pension plan with a marital value of $66,112.97 and husband retains his social security benefit with a marital value of $40,430.08; because wife's pension is worth $25,682.89 more, husband should receive half of this amount, $12,841.45. With a setoff ($61,998.59 minus $12,841.45), husband owes wife $49,157.14. The magistrate further recommended that wife pay husband child support in the amount of $351.92 per month for approximately eight years. Because the marital residence was purchased under a land installment contract, husband could not sell the property or obtain a mortgage; therefore, he had no viable way to pay wife the $49,157.14. The magistrate recommended that husband pay wife $500.00 per month for eight years until the balance is paid off. With a setoff ($500.00 minus $351.92), husband owes wife $148.08 per month. If husband pays wife the full balance while the child is still a minor, wife shall pay husband the child support amount of $351.92 per month until the child is eighteen and graduated.

{¶ 3} Both parties filed objections. Pertinent to this appeal, husband objected to the setoff of his social security benefits because of a new federal law that gives wife the ability to collect on his social security benefits when she qualifies despite participating in a pension plan. Wife objected to the payment of her equity in the marital residence over an eight-year period without interest, and contested her obligation to pay child support to husband as recommended by the magistrate. Transcripts of the hearings before the magistrate were not filed with the trial court. By judgment entry filed June 4, 2025, the trial court approved and adopted the magistrate's decision with a modification. The trial

court awarded husband a credit of $5,630.72 for retroactive child support, so husband is to pay wife $500.00 per month until $43,526.42 is paid in full. With the setoff ($500.00 minus $351.92), husband owes wife $148.08 per month. If husband pays off the balance while the child support order is in effect, wife shall pay husband her child support obligation until further order of the court; if husband still has a balance due after child support is modified or terminated, he shall pay wife $500.00 per month until the balance is paid off.

{¶ 4}   Wife filed an appeal with the following assignments of error:

I

{¶ 5}   "THE TRIAL COURT ABUSED ITS DISCRETION BY DELAYING SARAH ROBINSON'S RECEIPT OF HER ½ INTEREST IN THE EQUITY IN THE MARITAL RESIDENCE FOR AN 8 YEAR PERIOD, WHILE GRANTING TO JASON ROBINSON AN IMMEDIATE RIGHT TO HIS ½ INTEREST IN THE EQUITY IN THE MARITAL RESIDENCE."

II

{¶ 6}   "THE LOWER COURT ABUSED ITS DISCRETION BY IMPOSING THE CHILD SUPPORT OBLIGATION IT DID AGAINST SARAH ROBINSON."

{¶ 7}   Husband filed an appeal after wife, thereby becoming the cross-appeal, with the following assignment of error:

CROSS-ASSIGNMENT I

{¶ 8}   "THE TRIAL COURT ERRED BY APPLYING A SET OFF OF THE SOCIAL SECURITY BENEFITS TO THE VALUE OF PUBLIC PENSION, IN VIOLATION OF THE SOCIAL SECURITY FAIRNESS ACT."

{¶ 9} At the outset, we note transcripts of the hearings before the magistrate were not filed with the trial court pursuant to Civ.R. 53(D)(3)(b)(iii) which states: "An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Because the transcripts or an affidavit were not provided, the trial court determined it "must rely on the recitation of Findings of Fact as set forth in the Magistrate's Decision" in addressing the parties' objections. Judgment Entry filed June 4, 2025. The trial court then conducted an independent analysis and review of the file and adopted the magistrate's findings of fact and conclusions of law. *Id.*

{¶ 10} In our review, we will discuss wife's assignments of error in reverse order for ease of discussion.

II

{¶ 11} In her second assignment of error, wife claims the trial court abused its discretion in imposing the child support obligation it fashioned against her. We disagree.

{¶ 12} Child support orders are reviewed under an abuse of discretion standard. *Morrow v. Becker,* 2013-Ohio-4542, ¶ 9; *Booth v. Booth,* 44 Ohio St.3d 142, 144 (1989). "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process which would support that decision. *Id.* "It is not

enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 13} In this case, the parties agreed to a shared parenting plan, but could not agree on child support. R.C. 3119.24 governs child support under a shared parenting plan and states the following:

> (A)(1) A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet, except that, if that amount would be unjust or inappropriate to the children or either parent and therefore not in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.

> (2) The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and therefore not in the best interest of the child, and findings of fact supporting its determination.

(B) For the purposes of this section, "extraordinary circumstances of the parents" includes all of the following:

(1) The ability of each parent to maintain housing for the children;

(2) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant;

(3) Any other circumstances the court considers relevant.

{¶ 14} The statute does not mandate which parent is to be named the obligor or obligee for child support purposes.

{¶ 15} The magistrate made findings on the parties' respective incomes. Findings of Fact Nos. 10-12. Under the Ohio Child Support Guideline Worksheet, husband's monthly obligation was $505.09 and wife's obligation was $703.83. Wife's obligation was almost $200.00 more than husband's obligation so she became the obligor. *Sexton v. Sexton,* 2007-Ohio-6539, ¶ 12 (10th Dist.) ("where a trial court follows the statutory guidelines for calculating child support, designating one parent, particularly the one who earns significantly more than the other, as obligor in a shared parenting situation is not an abuse of discretion"). The magistrate then deviated wife's obligation by fifty percent "for time" given that the parties agreed to a shared parenting plan and were sharing their time with the child, lowering her obligation to $351.92. Pursuant to the plan, the child's residence shall be with husband for school purposes. Wife was to have visitation on Sunday, Monday, Friday, and every other Saturday; husband was to have visitation on Tuesday, Wednesday, Thursday, and every other Saturday. In its June 4, 2025 judgment

entry, the trial court left the door open for a modification or termination of the child support order.

{¶ 16} In her April 8, 2025 objections to the trial court, wife contested the child support award, arguing because the parties agreed to equally share parenting time with the child and divide any expenses, she should not be required to pay child support just because she earns more money than husband. Wife further objected to the deviation amount assigned to her and the recommendation concerning her annual net income for purposes of calculating child support. Wife did not explain how or why the deviation or the net income were in error.

{¶ 17} On appeal, wife argues the deviation overlooks husband's potential child support order. Wife argues the magistrate should have setoff the respective obligations, $703.83 minus $505.09, leaving her obligation to be $198.74 per month. But wife never made this alternative calculation argument to the trial court. We cannot now consider an argument that was not first made to the trial court for determination. *Alsup v. Alsup,* 2026-Ohio-233, ¶ 20-21 (5th Dist.) ("It is axiomatic that a party may not set forth an argument for the first time on appeal").

{¶ 18} Given the state of the record before the trial court and this court, we cannot find that the magistrate/trial court abused its discretion in designating wife as the child support obligor in the manner that it did.

{¶ 19} Assignment of Error II is denied.

I

{¶ 20} In her first assignment of error, wife claims the trial court abused its discretion in ordering husband to pay her equity in the marital residence over an eight-year period.  We disagree.

{¶ 21} A trial court "shall divide the marital and separate property equitably between the spouses" in accordance with R.C. 3105.171(B).  *See also* R.C. 3105.171(A)(3)(a)(ii).  As an appellate court, we generally review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard.  *See* R.C. 3105.171(C); *Cherry v. Cherry,* 66 Ohio St.2d 348 (1981); *Huffman,* 19 Ohio St.3d at 87.

{¶ 22} On the issue of the equity in the marital residence, the magistrate found the property was purchased from husband's parents under a land installment contract.  Findings of Fact No. 21.  The magistrate analyzed the contract and the appraisal of the current value of the property and determined wife's interest in the marital residence to be $61,998.59 which was not contested.  Findings of Fact No. 31.  The magistrate found the following at Findings of Fact No. 39:

> Upon review of Jason Robinson's monthly expenses and his balance sheet, the Court finds that he has minimal excess monthly income or assets from which he can reimburse Sarah Robinson for her share of the equity in the marital residence.  (Plaintiff's Exhibits U, V and Z).  Additionally, as noted in the Conclusions of Law below, the parties have not provided the Court with legal authority to support a finding that the Court can order the

sale of this property, as Jason and Sarah Robinson only have an equitable interest in the 222 Bank Lane SE property.

{¶ 23} The magistrate concluded the parties had an equitable interest in the property and "an equitable interest in real estate generally cannot be levied upon or sold under execution," citing *Basil v. Vincello,* 50 Ohio St.3d 185 (1990). Conclusions of Law No. 14. The magistrate noted neither party produced any legal support for her to find that she had the authority to order the sale of the property since the parties had only an equitable interest in the marital residence. *Id.* Based on her findings, the magistrate recommended $61,998.59 to wife for her equity in the marital residence, setoff with $12,841.45 for husband's share of wife's pension plan, for a net amount of $49,157.14 owed to wife. Recommendations No. 4. In Recommendations No. 5, the magistrate fashioned the following payment to wife:

Sarah Robinson owes a responsibility of $351.92 per month as and for child support to Jason Robinson commencing the date of the Divorce, herein determined to be March 29, 2024. No cash medical is ordered, as Sarah Robinson is providing the health insurance for the child. However, the owed child support should be offset by the amount of equity that Jason Robinson owes to Sarah, as there is no other viable way to provide payment to Sarah. Child [H.R.] is currently 10 years old. Her approximate graduation date from high school is June 2033. For that time period, Sarah Robinson would owe $351.92 from March 29, 2024 to June of 2033 to Jason, or

approximately eight years.   However, Jason Robinson owes Sarah Robinson $49,157.14 for her equity in the home.   Because there is no means by which Jason Robinson can force the sale of the home, or get a mortgage to pay Sarah, Jason is ordered to pay Sarah at a rate of $500 per month for a period of approximately eight years, or 98 months, until the balance is paid.   While [H.] is a minor, Jason Robinson shall pay to Sarah Robinson the sum of $148.08 per month, the difference between $500.00 and $351.92, commencing 04/01/2025.   Jason Robinson has the option to borrow the money owed to Sarah Robinson and [pay] the full amount at any point.  If Jason Robinson pays the full amount owed during the time in which [H.] is still a minor and in high school, Sarah Robinson is then responsible for above indicated child support payments until [H.] is 18 and graduated.

{¶ 24} In her April 8, 2025 objections to the trial court, wife contested the eight-year, interest free, payment plan, arguing husband is permitted to remain in the marital residence while she seeks replacement housing with no money for a downpayment.  Wife further argued the payment plan "presupposes" that she will owe child support for the next eight years.

{¶ 25} In its June 4, 2025 judgment entry, the trial court modified the recommendation as follows:

Sarah Robinson owes a responsibility of $351.92 per month for child support to Jason Robinson, commencing the date of the Divorce, March 29,

2024. No cash medical is ordered, as Sarah Robinson is providing the health insurance for the child. However, the owed child support should be offset by the amount that Jason owes to Sarah. Jason should be given a credit of $5,630.72 toward the amount he owes Sarah for her equitable interest in the marital residence for retroactive child support for sixteen months to the date of the divorce. Effective 7/29/2025, Jason is ordered to pay Sarah at a rate of at least $500.00 per month until the balance of $43,526.42 is paid in full. However, while the current child support order is in effect, Jason should pay Sarah $148.08 per month (the difference between $500.00 and $351.92). Jason has the option to pay Sarah the full amount at any point. If Jason pays the full amount owed during the time in which the current child support order is in effect, Sarah is then responsible for the above indicated child support payments in the amount of $351.92 until further order of the Court. . . . If Jason still owes Sarah for her equitable interest in the home after child support is modified or terminated, he should pay her at least $500.00 per month until the balance is paid in full.

{¶ 26} The trial court contemplated the possibility of a child support modification or termination.

{¶ 27} On appeal, wife argues the trial court could have ordered husband to pay wife her equity in a set period of time or in the alternative, order that the property be sold with the net sales proceeds being equally divided between the parties. But as noted by the magistrate, the parties did not produce any legal authority to support a finding that the

trial court could order the sale of the property given its purchase under a land installment contract; and without a transcript, the trial court was unable to review what was presented to the magistrate. Wife further argues husband immediately benefits from his equity because he is permitted to remain in the marital residence, but she has to wait eight years to receive the full benefit of her equity. The magistrate made a specific finding that husband "has minimal excess monthly income or assets" and no viable way to pay wife her share of the equity. Findings of Fact No. 39; Recommendations No. 5. We do not find any abuse of discretion in so finding.

{¶ 28} As for the interest, any award of interest is discretionary. *Koegel v. Koegel,* 69 Ohio St.2d 355, 357 (1982) ("A property award without interest may sometimes be inequitable, but it is not always so"). The Court further held: "We therefore decline to hold that a trial judge is obligated as a matter of law to mandatorily affix interest to those monetary obligations which arise out of a property division upon divorce. To do so would impose an unnecessary restraint on a trial judge's flexibility to determine what is equitable in a special set of circumstances." *Id.* Without a transcript, the trial court was unable to review what was presented and/or argued to the magistrate.

{¶ 29} Upon review, given the state of the record, we find the trial court did not abuse its discretion in ordering husband to make monthly payments to wife to pay off her equity in the marital residence.

{¶ 30} Assignment of Error I is denied.

CROSS-APPEAL I

{¶ 31} In his cross-appeal, husband claims the trial court erred in applying a setoff of his social security benefits to the value of wife's public pension, in violation of the Social Security Fairness Act. We agree insofar as the trial court failed to rule on the objection.

{¶ 32} Six hearings were held before the magistrate in 2024. The Social Security Fairness Act was signed into law on January 5, 2025. This Act ended the Windfall Elimination Provision and the Government Pension Offset; these provisions reduced or eliminated Social Security benefits for those individuals who received a pension based on work that was not covered by Social Security because they did not pay Social Security taxes e.g., teachers. *See* Social Security Administration, *Social Security Fairness Act: Windfall Elimination Provision (WEP) and Government Pension Offset,* https://www.ssa.gov/benefits/retirement/social-security=fairness-act.html?tl=0 (accessed Mar. 2, 2026). We note husband never requested an additional hearing after the January enactment to argue the application of the Act. The magistrate issued her decision on March 26, 2025, setting off husband's social security benefits from wife's pension. Husband timely objected, arguing a setoff was not warranted because the new Act gives wife the ability to collect on his social security benefits when (or if) she qualifies despite participating in her pension plan. The trial court failed to address this objection on a legal issue. Therefore, the trial court's judgment is reversed and the matter is remanded to the trial court to consider the applicability of the Social Security Fairness Act in this case and whether it has any impact on the divorce order.

{¶ 33} Cross-Assignment of Error I is granted.

{¶ 34} For the reasons stated in our accompanying Opinion, the judgment of the Tuscarawas County Court of Common Pleas is AFFIRMED in part, REVERSED in part, and REMANDED.

{¶ 35} Costs to Appellant.

By: King, P.J.

Hoffman, J. and

Popham, J. concur.